**WO**

**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kourosh Moshir, | No. CV-06-1052-PHX-FJM |
| Plaintiff, | **ORDER** |
| vs. | |
| PatchLink Corporation, et al., | |
| Defendants. | |

**I.**

Plaintiff Kourosh Moshir was employed as defendant PatchLink's President until September 6, 2005, when he was terminated. The dispute in this case concerns plaintiff's severance payment.

The second amended complaint ("Amended Complaint") (doc. 25) was filed on October 4, 2006. There, plaintiff alleges violation of 42 U.S.C. § 1981, against defendants PatchLink, O'Driscoll, Acord and Smith; violation of A.R.S. § 23-353, breach of contract, and breach of the covenant of good faith and fair dealing against defendants PatchLink and Smith, and fraud and negligent misrepresentation against all defendants. Amended Complaint at 4-8.

The court has before it defendants PatchLink, O'Driscoll, Acord and Frederickson's motion to dismiss plaintiff's second amended complaint ("Motion to Dismiss") (doc. 26),

1  defendant Smith's motion to dismiss plaintiff's second amended complaint (doc. 29),

2  plaintiff's response to both motions (doc. 30), and defendants PatchLink, O'Driscoll, Acord,

3  Frederickson and Smith's reply (doc. 33).   Defendant Smith's motion incorporates by

4  reference the arguments presented in the remaining defendants' motion to dismiss.

5       Defendants move to dismiss plaintiff's claims pursuant to Rule 12(b)(6), Fed. R. Civ.

6  P.  For the reasons stated below, we conclude that plaintiff has stated viable claims for

7  violation of 42 U.S.C. § 1981, breach of contract, breach of the covenant of good faith and

8  fair dealing and fraud.  However, we dismiss plaintiff's wage claim because he has not

9  actually performed services that qualify him for A.R.S. § 23-353 protection. We also dismiss

10  plaintiff's negligent misrepresentation claim because it is based on future conduct.

11                                        **II.**

12       A complaint should only be dismissed if "it appears beyond doubt that the plaintiff can

13  prove no set of facts in support of his claim which would entitle him to relief." Conley v.

14  Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102 (1957).  Therefore, we must accept all of

15  plaintiff's material factual allegations as true, and draw all reasonable inferences in plaintiff's

16  favor. Anderson v. Clow (In re Stac Elecs. Sec. Litig.), 89 F.3d 1399, 1403 (9th Cir. 1996).

17              A.  Consideration of Exhibits Attached to 12(b)(6) Motion

18       "Generally, the scope of review on a motion to dismiss for failure to state a claim is

19  limited to the contents of the complaint." Marder v. Lopez, 450 F.3d 445, 448 (9th Cir.

20  2005). However, " ' when [the] plaintiff fails to introduce a pertinent document as part of his

21  pleading, [the] defendant may introduce the exhibit as part of his motion attacking the

22  pleading,' " so long as certain conditions are met. Branch v. Tunnell, 14 F.3d 449, 453 (9th

23  Cir. 1994) (alteration in original) (citation omitted), overruled on other grounds by Galbraith

24  v. County of Santa Clara, 307 F.3d 1119 (9th Cir. 2002).  A court may consider such

25  evidence if "(1) the complaint refers to the document; (2) the document is central to the

26  plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the

27  12(b)(6) motion." Marder, 450 F.3d at 448.  A complaint "refers" to a document if it is

28  specifically mentioned in the complaint. See Branch, 14 F.3d at 453.  Considering such

1   documents does not covert a 12(b)(6) motion to dismiss into a motion for summary judgment,

2   because the documents are not outside the complaint. Id. at 453-54.

3       A court has discretion to consider matters submitted as exhibits even if they are

4   outside the complaint so long as the motion for dismissal is converted into a motion for

5   summary judgement. See Cunningham v. Rothery (In re Rothery), 143 F.3d 546, 549 (9th

6   Cir. 1998).  However, after conversion, a court must "give the parties a 'reasonable

7   opportunity to present all material made pertinent to such a motion by Rule 56.' " Bank Melli

8   Iran v. Pahlavi, 58 F.3d 1406, 1408 (9th Cir. 1995) (quoting Fed. R. Civ. P. 12(b)).  That is,

9   a court must "apprise the parties that it will look beyond the pleadings to extrinsic evidence

10  and give them an opportunity to supplement the record." Id.

11      Defendants attached six exhibits to their motion to dismiss.  The exhibits consist of:

12  a September 14, 2005 e-mail from plaintiff to Corey Smith ("Exhibit A"); a "revised

13  separation and severance proposal" ("Exhibit B"); an "e-mail to Mr. Jellison," plaintiff's

14  counsel ("Exhibit C");  "Plaintiff's purported acceptance to the previously rejected and

15  revoked Proposed Agreement" ("Exhibit D"); a letter from defendant Acord to plaintiff

16  ("Exhibit E"), and an email from defendant PatchLink's counsel ("Exhibit F"). See Motion

17  to Dismiss, Exhibits A-F; id. at 3-4 (describing the contents of the exhibits).  Defendants rely

18  on four of these exhibits in arguing for dismissal of Counts One through Four of plaintiff's

19  Amended Complaint.[1]  Therefore, as a preliminary matter, we must determine whether the

20  exhibits themselves are matters outside the complaint.

21

22

23

24      [1]  See Motion to Dismiss at 5, 7 (relying on Exhibits A, B and C in arguing that
    Counts Two and Three of plaintiff's Amended complaint should be dismissed because those
25  exhibits prove that the parties did not enter into an enforceable contract); id. at 8 (arguing
    that because there is no enforceable contract, an argument that relies on the content of
26  Exhibits A, B and C, plaintiff's Count One claim fails); id. at 9 (relying on Exhibit D in
    arguing that plaintiff's Count Four claim fails); id. at 10 (arguing that because there is no
27  enforceable contract, an argument that relies on the content of Exhibits A, B and C, plaintiff's
28  Count Four claim fails).

1   Exhibits A, B, C, E and F are documents unaddressed in the complaint. Accordingly,
2   they are matters outside the complaint and we may not consider them in ruling on a motion
3   to dismiss. Exhibit D, on the other hand, is a document we may consider in a 12(b)(6) ruling.
4   Defendants characterize Exhibit D as "Plaintiff's purported acceptance to the previously
5   rejected and revoked Proposed Agreement." This is the only document to which the
6   complaint refers. See Amended Complaint at 2-3 (describing a "Separation Agreement and
7   General Release and Waiver . . . signed by Defendant PatchLink's authorized representative,
8   Laura Frederickson" which plaintiff "accepted and signed" and returned to defendants).
9   Also, the document is central to plaintiff's claim, as plaintiff alleges it represents the contract
10   upon which several of his claims are based. Finally, although the parties do not agree on the
11   document's legal significance, neither question its authenticity. Therefore, Exhibit D is not
12   a matter outside the complaint.

13   We have authority to consider each exhibit so long as we convert the motion to
14   dismiss into a motion for summary judgment. However, we decline to do so. The parties
15   have had, as of this date, very limited time in which to conduct discovery. The arguments
16   raised by exhibits not part of the complaint are best addressed by way of motions for
17   summary judgment. The summary judgment deadlines will provide the parties with ample
18   opportunity to discover and present to the court all material rendered relevant by the exhibits.

19   B. Counts One through Six

20   Mindful that we may consider only one exhibit, we turn to defendants' arguments that
21   each of plaintiff's claims should be dismissed.

22   1. 42 U.S.C. § 1981

23   Defendants first argue that plaintiff's Section 1981 claim fails against defendants
24   PatchLink, O'Driscoll, Acord and Smith because the parties did not enter into an enforceable
25   contract. Motion to Dismiss at 8. However, a Section 1981 claim does not require the
26   existence of an enforceable contract. Domino's Pizza, Inc. v. McDonald, 546 U.S. 470, __
27   , 126 S.Ct. 1246, 1249-50 (2006). Rather, Section 1981 protects "the would-be contractor
28   along with those who already have made contracts." Id. at 1250. Therefore, defendants

1    cannot defeat plaintiff's Section 1981 claim by simply alleging that a valid contract did not
2    exist.

3         Defendants alternatively argue that plaintiff's Section 1981 claim fails against
4    defendants O'Driscoll and Acord, PatchLink officers, because officers cannot be liable for
5    the corporation's contracts.  See Motion to Dismiss at 8 n.4.  Their argument relies on a
6    misapplication of Domino's Pizza.  As plaintiff notes, Domino's Pizza stands for the
7    proposition that a corporation's officers have no right to *sue* under Section 1981 if they have
8    no rights under the corporation's contracts.  See Domino's, 126 S.Ct. at 1250-51.

9         While it is true that an agent (officer) is not liable for a disclosed principal's
10   (corporation) contract obligations, "corporate officers are personally liable for their torts even
11   if the torts were committed on behalf of the corporation."  Mone v. Dranow, 945 F.2d 306,
12   308 (9th Cir. 1991).  Recognizing that "[a]n action brought under statutes forbidding racial
13   discrimination is fundamentally for the redress of a tort," Tillman v. Wheaton-Haven
14   Recreation Ass'n, 517 F.2d 1141, 1143 (4th Cir. 1975) (citing Curtis v. Loether, 415 U.S.
15   189, 195, 94 S. Ct. 1005 (1974), at least one circuit has held that "directors become
16   personally liable when they intentionally cause a corporation to infringe the rights secured
17   by §§ 1981 and 1982."  Id. at 1146.  For these reasons, we deny defendants' motions to
18   dismiss plaintiff's Section 1981 claim on this alternative ground.

19        2.  Breach of Contract and Breach of the Covenant of Good Faith and Fair Dealing

20        Defendants argue that plaintiff cannot state a valid claim for breach of contract or
21   breach of the covenant of good faith and fair dealing because the parties did not enter into
22   an enforceable contract.  An enforceable contract exists where there is an offer, acceptance,
23   and consideration, and the parties intend to be bound.  See Tabler v. Indus. Comm'n of Ariz.,
24   202 Ariz. 518, 520-21, 47 P.3d1156, 1158-59 (App. 2002).  An offer to enter into a contract
25   on certain terms cannot be accepted by an offeree's counteroffer that declines those terms.
26   See Hargrave v. Heard Inv Co., 56 Ariz. 77, 80, 105 P.2d 520, 521 (1940).  After an offeree's
27   counteroffer is made, the original offer loses its effect.  Id.  Similarly, "[a]n offeree's power
28   of acceptance is terminated when the offeree receives from the offeror a manifestation of an

1  intention not to enter into the proposed contract."  Restatement (Second) of Contracts § 42

2  (1981).

3      Defendants first contend that plaintiff's contract claims should be dismissed because

4  plaintiff's counteroffer terminated its power to accept defendant PatchLink's original offer.

5  See Motion to Dismiss at 4-6.  However, in so arguing, defendants rely exclusively on the

6  purported counteroffer contained in Exhibit A, a document we may not consider.  Next,

7  defendants contend that PatchLink's subsequent offer revoked its original offer.  Id. at 6-7.

8  Yet this contention is based solely on Exhibits B and C, documents we also may not

9  consider.      Plaintiff's Amended Complaint alleges the existence of an enforceable contract,

10 contending that there was an offer, acceptance, and consideration, and that the parties

11 intended to be bound.  Claims are thus stated.  Defendants will have an opportunity to raise

12 their contentions on summary judgment.

13                              3.  A.R.S. § 23-353

14      Defendants move to dismiss plaintiff's wage claim on four independent grounds.

15 First, they argue that the claim fails because it requires proof of an enforceable contract,

16 which plaintiff has failed to allege.  Motion to Dismiss at 8.  Next, defendants contend that

17 because PatchLink's severance pay offer was discretionary, it does not qualify as wages for

18 purposes of A.R.S. § 23-350(5).  Id. at 9.  Third, defendants allege that plaintiff's obligations

19 under the severance pay agreement are not the kind of work for which an employer is

20 required to pay wages.  Id. at 10.  Finally, defendants argue that even if plaintiff did promise

21 to perform obligations for which wages would generally be due, the wage claim nevertheless

22 fails because the obligations were never actually provided.  Id. at 9.  We find merit in

23 defendants' final argument, and therefore need not reach the remaining grounds.

24      An employer is required to pay wages due an employee within time periods specified

25 by A.R.S. § 23-353.  If the employer fails to do so, the employee may recover "an amount

26 which is treble the amount of the unpaid wages."  § 23-355.  Severance pay qualifies as

27 wages for purposes of A.R.S. § 23-355 if it is "nondiscretionary compensation due an

28 employee in return for labor or services rendered by an employee for which the employee has

a reasonable expectation to be paid whether determined by a time, task, piece, commission or other method of calculation." § 23-350(5). Section 23-355 "protects employees from an employer's groundless refusal to pay compensation which was promised and which was due 'in return for work performed.' " Schade v. Diethrich, 158 Ariz. 1, 12, 760 P.2d 1050, 1061 (1988) (quoting Nieto-Santos v. Fletcher Farms, 743 F.2d 638, 642 (9th Cir.1984)). Plaintiff does not allege that any of his obligations under the severance pay agreement were actually performed. Therefore, we dismiss plaintiff's wage claim.

### 4. Fraud

Defendants allege that plaintiff's fraud claim fails for four, independent reasons: (1) the parties' communications constituted negotiations that lacked any element of fraud; (2) the representations upon which plaintiff bases his fraud claims were promises of future conduct; (3) Arizona's economic loss rule bars the claims, and (4) the claims are not pled with sufficient particularity. We address these arguments in turn, and conclude that each lacks merit.

Defendants first argue that plaintiff's fraud claim must fail because "the parties' back-and-forth contract negotiations reveal that there was no 'fraud' and that, instead, Plaintiff *rejected* the Proposed Agreement on which he now sues." Motion to Dismiss at 10 (emphasis in original). This argument presupposes that plaintiff must first prove the existence of an enforceable contract in order to bring a fraud claim. However, the law of contracts and the law of torts impose separate, and at times independent, duties. The absence of a viable contract claim does not automatically eviscerate a fraud claim. In fact, defendants offer no authority in support of their assertion. Therefore, we deny their motion to dismiss plaintiff's fraud claim on this ground.

Defendants next argue that plaintiff's fraud claim fails because "[a] promise of future conduct is not a factual misrepresentation capable of supporting a claim for fraud." Motion to Dismiss at 11. A representation is actionable as fraud when it relates to a present or preexisting fact, "and cannot be based on unfulfilled promises or statements as to future

events." <u>Ahmed v. Collins</u>, 23 Ariz. App. 54, 56-57 (App. 1975).  Unkept promises relating to future events are, at most, a breach of contract.  <u>Id.</u> at 57.  However, an established exception to this general rule is a promise made without present intention to perform; there, "the misstatement of the present intention is regarded as a misrepresentation of fact."  <u>Id.</u>

Plaintiff's complaint alleges that defendants promised to provide him with a severance payment if he executed a "General Release and Waiver," and that defendants never provided the payment.  <u>Amended Complaint</u> at 6-7.  However, the Amended Complaint goes on to allege that defendants engaged in fraudulent conduct because "[d]efendants knew when they promised Plaintiff he would be compensated under the terms of the Agreement that the promise was false and Defendants had no intention of providing Plaintiff his full severance when the representations were made."  <u>Id.</u> at 7.  Contrary to defendants' assertion, plaintiff does not predicate his fraud claim on promises of future action.  Rather, he alleges that defendants made a promise without a present intention to perform.  Therefore, we deny defendants' motion on this alternative ground.

Defendants third argument contends that Arizona's economic loss rule provides that "an individual who suffers economic damages as a result of the conduct of another cannot recover those losses in tort."  <u>Motion to Dismiss</u> at 12.

Stated generally, the economic loss theory is alleged to bar tort liability "for a purely economic tort," where there is contractual liability.  Richard A. Posner, <u>Common-Law Economic Torts: An Economic and Legal Analysis</u>, 48 Ariz. L. Rev. 735, 740 (2006).  In a dispute between parties to a contract, the broadest application of this rule would bar tort claims, and leave the plaintiff to recover, if at all, on the contract.  <u>See</u> Dan B. Dobbs, <u>An Introduction to Non-Statutory Economic Loss Claims</u>, 48 Ariz. L. Rev. 713, 728 (2006).  Arizona courts have barred recovery for economic damages in the context of construction liability, where " ' the resulting failure to receive the benefit of the bargain is a core concern of contract, not tort law.' "  <u>Carstens v. City of Phoenix</u>, 206 Ariz. 123, 126, 75 P.3d 108, 1084 (App. 2003) (citation omitted).  Federal courts applying Arizona law have extended the

1  rule to "non-products liability tort claims," <u>Southwest Pet Prods. v. Koch Indus.</u>, 89 F. Supp.

2  2d 1115, (D. Ariz. 2000), and have used it to foreclose claims of negligent misrepresentation.

3  <u>See</u> <u>Apollo Group v. Avnet, Inc.</u>, 58 F.3d 477, 480 (9th Cir. 1995).  But in Arizona, there is

4  no "blanket disallowance of tort recovery for economic losses."  <u>Salt River Project v.</u>

5  <u>Westinghouse Elec. Corp.</u>, 143 Ariz. 368, 379, 694 P.2d 198, 209 (1984).

6        We have already held that the economic loss rule has no application to the tort of

7  fraud under Arizona law.  <u>KD & KD Enter., LLC, v. Touch Automation, LLC</u>, 2006 U.S.

8  Dist. LEXIS 93730 *1, at *6 (Dec. 27, 2006) (explaining that such an extension would

9  compromise both the "principles underlying the economic loss rule" and public policy).[2]

10       Central to our conclusion is the fact that contractual remedies for fraud will be either

11  insufficient, or, more likely, unavailable.  In order to recover in contract on a fraud claim

12  based on a promise made without present intention to perform, a party must first foresee, and

13  then contract around, the very fraudulent statements that induced it into the contractual

14  relationship.  To impose that sort of foresight on contracting parties is both impractical and

15  unreasonable.  The economic loss rule has no logical application to the tort of fraud, which

16  by its very nature is designed for stand alone economic injury.  Therefore, we conclude that

17  Arizona's economic loss rule does not bar plaintiff's fraud claim, and deny defendants' motion

18  on this ground.

19       Finally, defendants argue that plaintiff has not pled fraud with sufficient particularity,

20  <u>see</u> <u>Motion to Dismiss</u> at 15, but has merely parroted the elements of a fraud claim.  <u>Reply</u>

---

23    [2] "[T]he idea of on economic loss rule applicable to fraud claims seems to date from
the late 1980s, but no earlier," and "[t]he notion has been promoted primarily by federal
courts." Jean Braucher, <u>Deception, Economic Loss and Mass-Market Customers: Consumer</u>
<u>Protection Statutes as Persuasive Authority in the Common Law of Fraud</u>, 48 Ariz. L. Rev.
829, 840 (2006); <u>see</u> <u>All-Tech Telecom, Inc. v. Amway</u>, 174 F.3d 862, 866-67 (7th Cir.
1999) (criticizing federal courts that have implied that the economic loss doctrine abolishes
the tort of misrepresentation, including deliberate fraud, in cases in which the parties have
a preexisting contractual relationship, because those courts have given binding effect to state
courts' economic loss dicta).

at 9.  "Federal Rule of Civil Procedure 9(b) requires a pleader of fraud to detail with particularity the time, place, and manner of each act of fraud, plus the role of each defendant in each scheme."  Lancaster Comty Hosp. v. Antelope Valley Hosp. Dist., 940 F.2d 397, 405 (9th Cir. 1991).  A federal court will examine state law to determine whether the elements of fraud have been pled sufficiently to state a cause of action.  Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1103 (9th Cir. 2003).  However, " 'the Rule 9(b) requirement that the circumstances of the fraud must be stated with particularity is a federally imposed rule.' " Id. (citation omitted).  That is, while we will look to Arizona's substantive law to determine whether the elements of fraud have been sufficiently pled, Arizona's procedural rules do not govern our particularity analysis.

Plaintiff's complaint alleges that "[d]uring September, 2005, Plaintiff was continuously promised by Defendants that he would receive a severance payment if he executed a General Release and Waiver," that "Defendants failed to provide Plaintiff with payment under the Agreement," that "Defendants' representations to Plaintiff regarding the actual terms of the Agreement were false in that Defendants did not intend to make the promised payment," and that defendants knew their promise was false.  Amended Complaint at 6-7.  We find that these statements meet Rule 9(b), Fed. R. Civ. P.'s requirements.

5. Negligent Misrepresentation

Defendants argue that plaintiff's negligent misrepresentation claim should be dismissed for the same four reasons that warrant dismissal of the fraud claim.  However, we need only discuss defendants' contention that the representations upon which plaintiff bases his claim are unactionable promises of future conduct.

As in the context of fraud claims, a promise of future conduct that is unkept cannot support a claim for negligent misrepresentation.  See McAlister v. Citibank, 171 Ariz. 207, 215, 829 P.2d 1253, 1261 (App. 1992).  However, unlike fraud, negligent misrepresentation, which is predicated upon the failure to exercise reasonable care, does not carve out an exception for a promise made without present intention to perform.  See Restatement

(Second) of Torts § 552 (1977).  Plaintiff bases its negligent misrepresentation claim on defendants' failure to keep their promise to provide plaintiff with a severance payment.  See Amended Complaint at 7.  This promise of future conduct, even if unkept, cannot support a negligent representation claim.  Therefore, we grant defendant's motion to dismiss this count of plaintiff's complaint.

Therefore, **IT IS ORDERED DENYING** defendants' motions to dismiss Counts One, Two, Three and Five of the Second Amended Complaint and **IT IS ORDERED GRANTING** defendants' motions to dismiss Counts Four and Six of the Second Amended Complaint (docs. 26 and 29).

DATED this 12th day of February, 2007.

_____
Frederick J. Martone
United States District Judge